Mr. Adelstein, do you want to reserve rebuttal time? Good morning, Your Honors. Yes, I'd like to reserve four minutes for rebuttal. Four minutes, okay. This is a This is a 20-minute, 20-minute, excuse me one second, this is a 20-minute, sorry, thank you. You almost got cut down to half. Wouldn't want to do that. No, no. This is a case, and I apologize for the last-minute flurry of filings based on the new developments in the State Court over the past Well, we will, by the way, rule on each of these motions and give you our indication afterwards. You can go ahead and argue it whichever way you want. It won't upset us or hurt our feelings or anything, so go ahead. Okay, thank you. This case involves fundamentally two separate proceedings. There's a State Court proceeding brought by one set of limited partners for breach of fiduciary duty. That was tried. They won. The trial court in California found that the defendant Prometheus, the defendant Prometheus had breached its fiduciary duties in 17 separate ways. It was vigorously appealed. The California Court of Appeal You're talking about the California case, right? That's the California case, right. Right, right. And just recently, the California Supreme Court denied review. A total of 11 judges in the California State system have looked at this one way or another, and all have concluded explicitly or implicitly that there was a breach of fiduciary duty here. It sounds like you should have filed your case in the State Court. Well, I think we would have liked to, but for the class action requirements. I'm sorry. Can you explain that to me? Well, it was brought as a class action, so, and there was diversity. So we filed in the, this court. You could not have filed in the State Court? Is that what you're talking about? I believe that's right, Your Honor. But in any case, we did file here. And the Federal District Court here concluded that on the pleadings on a 12b-6 motion that we failed to state a cause of action for breach of fiduciary duty. That decision is erroneous. The simplest way to reverse is to apply collateral estoppel. The State proceedings are now final. That's the subject of our supplemental brief. I would respectfully recommend that you not spend a whole lot of time on that. Your argument, if we decide to grant your motion with respect to that issue, we will look at it and decide based upon that argument. But I think you'd be well advised to focus on this case in this court in the Federal Court. Okay. I just simply wanted to note that. But on the pleadings itself, we stated a cause of action for breach of fiduciary duty. The law is clear that partners owe each other fiduciary duties, including the duty of loyalty. It's one of the highest duties. And in a self-dealing transaction, it's implicated most seriously, because the partner who is the fiduciary is sitting on both sides of the transaction and is operating both to his benefit and to the potential of the other. So you decided a lot of Delaware law. Right. None of which seem to relate directly to limited partnerships. But let's just stick with California for the moment. What California authority can you cite to us, other than the unpublished opinion in this companion, your companion case, that comes to the conclusion that you argue in your case? Well, there's the Everest-8 case. There's the Anea case. There's a couple of them dealing specifically with the fiduciary duties owed by partners. Those cases set forth some very general principles. I think Everest-8 is probably the one most closely on point. I'm particularly interested in the issue that deals with, let me get the right quote for you here, California Corporation Code Section 16,103b3 that says that votes have to be by unanimous vote of the limited partners or whatever is in the partnership agreement, in quotes, if not manifestly unreasonable, in quotes. Do you have any case law that you can cite to us that construes what, if not manifestly unreasonable, means in this context? Back up one step. What was the statute? Okay. The statute is California Corporation Code Section 16,103b3, which is part of the Partnership Act. It indicates that when you're voting on certain matters, there are two alternatives to establish a ratification. One is a unanimous vote or whatever is in the partnership agreement, and that's just my language, and then, in quotes, if not manifestly unreasonable. I'm asking you whether there's any case law in California which you are aware, other than the unpublished California companion case to this one. Right. That construes that language in the context of a large limited partnership. I'm not aware of any case that does that. Are you referring to the issue of the voting rules? Correct. Yeah. The — I think the — in that — in the proxy, the defendants actually said inconsistent things pertaining to what they would — the voting rules. Oops. I'm sorry. And I understand that. I'm just asking you for case law at this time. Do you have — do I understand you to say that you're unaware of any California case law that has construed that statutory section? I'm unaware of any. Counsel, your argument below — was your argument below that the ratification had to be unanimous? No. And that's not your argument today, is it? No. No. There's two separate possibilities. In Scone, the ratification was unanimous. There was one other limited partner and that limited partner. Although the court in Scone didn't say it had to be unanimous, correct? Correct. What the Scone court said is you need full and complete disclosure to the other partners, and you have to secure their approval and consent. It's not clear from the facts of the case whether it's talking about unanimous approval or a majority. Now, but Scone — isn't Scone clearly distinguishable here? I mean, that involved two partners. One sued the other on the basis of a unanimous agreement. Here we've got a big limited partnership with a lot of people who were not intimately involved. The court very reasonably in that case said here we've got two people. They're big boys. They've signed an agreement. How can you possibly say that there's not a ratification here? Right. But here you've got a lot of people who relied upon certain representations that were made. They formed their own opinions, and then they signed or didn't sign and voted and didn't vote. That's what we're really dealing with here, isn't it? That's right. That's right. And what courts have held in every other context involving fiduciaries is that if there's a majority of the disinterested fiduciaries that vote in favor of the court — Which you didn't have here, right? We did not have a majority of the disinterested. Forty-six percent of the limited partners voted for the merger. The rest either didn't vote or voted no. And so that first element, the second element of Scone, I'm sorry, the majority element, or of the general fiduciary duty law is not met here. You don't get the cleansing effect of ratification as the cases refer to it. Do you believe that the Amundsen case, which is admittedly in the corporate context, has any bearing upon the analysis in this case? I do. I do. And in what way? The inherent fairness standard is set forth in Amundsen. In that case, it's applied to the corporate context. The reason for applying it is, Amundsen says, because corporate directors and controlling shareholders are fiduciaries. In other contexts, say an attorney-client relationship where you also have a fiduciary, the California Supreme Court has held that the inherent fairness standard applies. And on this particular case, of course, we're dealing with a limited partnership, but also a general partner who is, by definition, a controlling entity. Correct. Right? Correct. And so is there an exact analogy? Is there some analogy? How does Amundsen relate? What's the standard, if any, that Amundsen should, that we should draw from Amundsen in this case? I think if I could phrase the rule in Amundsen as applied here, it would be that a general partner who controls a partnership owes fiduciary duties and in a self-dealing transaction has the burden of showing the inherent fairness of the transaction. And what is the nature of that fiduciary obligation here? What duties? There are lots of them, of course, in a trustee relationship. What fiduciary duties are owed in this context? Well, it's specifically the duty of loyalty in this case, which is not to place his personal interest above the interest of the limited partners to whom he owes the fiduciary duty. As applied specifically in this case, what it means is not to misrepresent things to them, not to secretly do things for his own benefit. I think it's important to note that we've listed eight things, which I'd like to talk about. I mean, we could talk about the law and the facts, but I guess maybe we should stick with the law here just to make sure we're on the same page. But, Adelstein, before you get too far, and you're going in a good direction, that's fine. But I think you're going to argue that all the disclosures here were not sufficient. They should have been better disclosures. And as a result, even if you had a majority vote approving the transaction, the vote is no good. That's going to be, I think, your first argument, is it? Yes. And then you're going to argue that if all of these disclosures and representations and all of the general partner were sufficient, it still isn't any good because the vote was not sufficient. Is that correct? Well, let me be precise about that. On the second argument, there's two separate issues, and it's important to keep them distinct. One is whether there was a majority vote for the merger. I understand that. There was. And so the merger went through. The second issue is whether a majority of the disinterested limited partners voted for the merger, and if so, there would be certain cleansing effects of ratification. That was not met here. And so if you did not have the majority vote of the disinterested or unaffiliated partners, if you didn't have that, it really wouldn't make any difference how honest and straightforward the representations of the general partner were. Is that correct? If the vote of approval was not sufficient? No. If the vote of approval was not sufficient, the – there would not be – the defendants would not receive the benefit of ratification. Right. But if all of the disclosures were proper, there would just not be a cause of action for breach of fiduciary duty. That is, first, you have to show the breach, and there's an issue of who has the burden and what needs to be shown. The ratification affects that burden, but it doesn't affect the underlying – the underlying duties. And so I don't get that. Why do you say that? Well, suppose that they had adequately disclosed everything. This is not the case, but they were perfectly honest. It was an above-board transaction, and they received 46 percent, but they voted the rest to bump it over 50 percent. The merger would have gone through. Why? The partnership calls for a majority. Right. It requires 6 percent plus 1. They were – they were – they had about 18 percent of the votes. So 46 percent of the disinterested limited partners voted for the merger. Right. They still have some additional votes. If they vote 100 percent of their shares, that would be enough to bump it over the 50 percent. You're saying – If they voted. If they had, right. But they didn't vote. No. They voted their share – they voted about 73 percent of their shares in favor of the merger. The defendant, Prometheus, voted 73 percent of its shares in favor of the merger. Right. But, again, trying to understand your position here, Judge Thompson asked to understand – I think he was postulating what your perspective was on this. One of the things he said was if you assume arguendo that the representations were materially accurate. Right. Then you get down to the question of was there a breach of fiduciary duty. I think he said there wasn't a breach of fiduciary duty. But if there's a duty of loyalty and if that is construed that you cannot count affiliates, affiliated partners in the vote, which means by definition then that you have to have a majority of the unaffiliated limited partners voting. Correct. Is that correct? Yes. Okay. And are you saying that more than 50 percent of the unaffiliated limited partners, considering the universe of limited partners, voted for this? No. 46 percent. Okay. So under that circumstance, isn't the answer to Judge Thompson's question that if you take that all arguendo, that there would in fact be a breach of the fiduciary duty and that the merger would not occur or was not authorized? No, because the votes of the self-interested votes could still count as far as the issue of the merger. Why is that different from the issue of the fiduciary duty? Because the merger can go through and the general partner can still breach his fiduciary duties. I mean, I guess the simplest way to see it is suppose. So you don't look at it as an ab initio thing. You look at it as whether or not there are damages that flow from the breach of the fiduciary duty. That's right, or whether there was a breach and whether damages flow. Tess, let me ask you a few questions here with the ratification. As I understand it, you argued below and you argue now, that what actually sets the rules of the game are the partnership agreement? Both the partnership agreement and the proxy and the case law. There are certain duties imposed by law that can't be. The district court below concluded that the proxy agreement specifically addressed the issue of what a no vote meant, correct? Or what a non-vote meant? Yes, and that's in fact incorrect. I mean, the judge was wrong, but yes, the judge did that. And so are you relying then on the partnership agreement with respect to, in trying to determine whether or not a proper ratification occurred, are you directing us to look at the partnership agreement or to look at the proxy? In this case, the proxy. And what they said, inconsistent things on the proxy. And this is spelled out on page. If you be sure to answer Judge Hayes' question, because you're starting to eat up your four minutes. I want you to reserve whatever time you want, but answer the question. I understand there's an inconsistency in the proxy agreement. You pointed that out in the reply brief, correct? Yes. With respect to, though, the partnership agreement, it doesn't – there's no reference in the partnership agreement between interested and disinterested partners, correct? It talks about majority vote. It doesn't say it has to be a majority vote of the disinterested partners. I believe that's right. We're not challenging that the merger went through properly. And you're saying that the vote, though, because there was not a majority vote of the disinterested partners, that the ratification couldn't occur? Correct. But it doesn't – nowhere – it talks about vote. It doesn't say that there has to be a vote. It says majority vote in turn means the vote of limited partners who are entitled to vote, consent or act, and are holders of record of a majority of the outstanding units. It doesn't say what happens to a non-vote, correct? The partnership agreement, I don't believe, says that. The proxy says two inconsistent things. Just relying on the partnership agreement, what's the basis in the partnership agreement to saying that it requires a vote of the both – Well, I believe that the partnership agreement simply sets forth the rules for a merger like this, and the rules are a majority, interested or disinterested. And they got more than 50 percent once the defendants voted their shares, and there's no dispute that the merger went through. The question is whether there was a breach of fiduciary duty along the way. And that is a separate analysis. That's whether there was a majority of disinterested limited partners. That is imposed by case law. Okay. If you want to hold that thought, then you'll get the rest of your time after we hear argument from Prometheus. I think Mr. Johnson is arguing the case. Welcome from D.C., Mr. Johnson. Thank you, Your Honor, and may it please the Court. I'd like to begin with this voting issue and see if I can cut through some of the fog on this. I'm a little bit confused because counsel for the plaintiffs has said there's no dispute that the merger went through, and yet there's a lot of discussion here about whether the vote was sufficient. And so I'd just like to address that quickly. As an initial matter, I would point out that Judge Alsup found that they were judicially estopped on this issue because they had represented to him in their opposition to the first motion to dismiss that the vote was sufficient. So you don't even need to reach this. But, counsel, under New Hampshire v. Maine, how do you get to that? The Supreme Court laid out what governed judicial estoppel, and you go through this case. I'm very interested in how you think you get to judicial estoppel under that standard. Sure. New Hampshire v. Maine said that the purpose of the doctrine of judicial estoppel is, quote, of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. I would encourage the Court to look specifically at how things unfolded below in terms of the initial complaint, the first motion to dismiss, the opposition to the motion to dismiss, Judge Alsup's ruling, and then the second amended complaint. He specifically found that this was an especially appropriate case for the application of judicial estoppel because he relied upon their representation in ruling on the first motion to dismiss. And it seems to me that that goes to the integrity of the judicial process, and it goes to preventing a change in position based on the exigencies of the moment. So you think the whole case ought to be decided based upon what was represented in the pleading? I think it could be, to the extent that the vote is the issue. But I don't think you need to do that because, as you've noted yourself, California law provides that unless there's something manifestly unreasonable about the manner in which the vote is conducted, it's substantively okay. Can we get to that issue? Because this, at least for me, is an interesting and important point. You heard what I said to your opposing counsel. Do you agree that the merger, either way, whether or not there's fiduciary duty involved here, do you agree that the merger occurred? Yes, you are. You do. Even if you postulate that under traditional fiduciary law concept, disinterested parties can't vote. Do you agree with that? Traditionally that's the case? Well, I don't know if it would be that disinterested parties can't vote at all. I mean, in this case. They can vote, but it doesn't get counted toward things in the partnership agreement that require a majority vote. Or alternatively, it's counted in the same way that the other disinterested parties vote. The only way in which there wasn't a majority here is if the no votes are counted against. They're counted as if they were not voting. No. If the votes that were not voted are counted as votes against the merger, then you get to their 45 percent number. That's the only way you get to it. If you simply don't count them, there's still a majority, a 50.7 percent majority. And this is all set out in some detail in our briefs. But there's simply no basis in California law, in either the statutes, in the case law, the statute that you've cited, let alone the proxy statement that says no votes have to be counted as votes against. Do you agree that under California corporate law that there are only two ways to establish ratification? One, a unanimous vote by those present and not present, or whatever the partnership agreement provides, in quotes, if not manifestly unreasonable. Do you agree that it's one or the other? Probably a fair statement of the law. I'm not we did not specifically discuss that statutory provision in the briefs. If you look at the various sources from which you might derive a rule on how voting should occur, you look at the case law. As you've noted, Scone was a case where there were two limited or two partners. So obviously anything less than a unanimous vote would not have been a majority. So that case does not establish the rule that you have to have anything unanimous. If you go on to look at the proxy statement, that is very, very clear in this context, and this is found at the supplemental excerpts of record, page 101 and page 126. PIP partners has agreed to vote its units for or against. And we understand that, counsel, that they agreed to tie them to what these folks did. But I'm struggling with and would like your help on this issue of fiduciary duty. California places a very high premium on fiduciary responsibilities of controlling persons in business entities, Amundsen being the most well-known case. You heard me discuss this with your opposing counsel. I'm interested in your perspective. If we assume arguendo that Amundsen is controlling public policy, if you will, in California about controlling persons, why wouldn't it be manifestly unreasonable to count disinterested limited partners when you determine whether the vote was sufficient? Well, I'm not suggesting that all disinterested limited partners shouldn't be counted. No, I understand you're not saying that. I'm asking you a question. If you assume arguendo that the spirit of Amundsen controls California law and if you stipulate that because there's a general partner involved here, which in a limited partnership by definition controls the partnership, and that therefore there is a fiduciary obligation, why under fiduciary concepts of duty of loyalty would you count affiliated limited partnership votes in getting to the majority? Including counting non-votes as votes? Correct. No, no. Because that's the only way you get less than 50%. I understand. If the universe of limited partners is, you know, 100% of whatever, and if you don't count the limited partners that are affiliated, then the way you get to that is counting whether there are enough votes of the limited partners who vote to get you over the 50%. I don't know that Amundsen goes that far. Oh, it doesn't. No, it's a corporate case. I'm just talking about the concept, the public policy of avoiding breaches of fiduciary duty by controlling majority. I'm sure you're very familiar with the Amundsen case. I am. In a corporate context, I think you'd have to agree that the Court was pretty tough on that. Well, I think if ‑‑ I'm not sure I agree with the predicate that the general partner here is in a position completely analogous to a majority shareholder. He's probably in a better position, isn't he? Well, I think you could argue that when he only has 18% of the shares that he's ‑‑ But he's the general partner. Obviously, the general partner, by definition, in a limited partnership context, is supposed to control all management decisions, right? And, indeed, if a limited partner goes too far into that context, that limited partner can be made, if so facto, a limited partner and lose his or her limited partnership liability, right? I'm not sure of the answer to that. Take my word for it. That's the case. So under the circumstances, it leaves even more of a burden, perhaps, on a general partner of a limited partnership as a control person than perhaps the majority shareholders or the control persons in Amundsen. Would you agree with that? I think that there are many valid reasons, Your Honor, for treating partnerships and corporations differently. And I don't ‑‑ I'm not sure that I ‑‑ Why should they be treated differently? Well, I think that they function differently, for one thing, and that the corporations have a greater degree of public responsibility. I think you see this reflected in the ‑‑ Even if they're publicly traded? Well, I think probably a publicly traded corporation, to continue the analogy, would have a greater degree of obligation than a publicly traded partnership. Why is that? Just more people involved? Well, I think ‑‑ I guess the only answer I can give you, and I'm not sure if this will satisfy you, is that as a general matter that the corporate law reflects a greater degree of fiduciary responsibility than the partnership law. And I think that you see that. Certainly, the cases that have been decided, that would probably be true. But would you admit that there have been very few cases decided in this area? Well, I'll ‑‑ Deal with the fiduciary issue. There certainly aren't any cases extending or holding in California that SCOAN doesn't apply in the context of a limited partnership. And I, at least personally, I agree with you. SCOAN is irrelevant in this case, because SCOAN deals with an entirely different factual situation. Well, it's irrelevant insofar as it goes to the issue of whether there's a sufficient vote. But it's not irrelevant insofar as it defines the duties of the limited partnership and the general partner in the limited partnership. And it holds, as you know, that there is ‑‑ that the full disclosure and approval is sufficient to satisfy the fiduciary responsibility of the general partner. But in this case, you only had one other person, and that person signed off on the deal, right? In SCOAN? SCOAN, right. Correct. So you got two people. How is that analogous to a limited partnership? How many limited partners were there in this case? There were 18,000 shares, Your Honor. The precise number of limited partners I don't know. Are we talking about more than 1,000 people, entities, people? It was in the hundreds, I believe. I'm not actually sure. Any idea? 500, 600, 700? Any idea? I don't know the exact number. We can find it for you, Your Honor. This wasn't a mom and pop operation where Joe sets up a partnership, gets his brother and sister-in-law involved, and somebody else. This is a publicly traded limited partnership in the sense that you've got lots and lots of people involved. That's correct. Let me bring you back to the partnership agreement yourself, Your Honor. Maybe that will answer your question under the statute that you have cited. The partnership agreement, which is found at ER 62, Exhibit 62, Page 7, is fully consistent with every other source of law that's relevant here. And it says that the majority vote shall mean the vote of the limited partners who are entitled to vote, consent or act, and are holders of record to a majority of the outstanding units. And so that's consistent with what the proxy statement says. There's really no source of authority that says no votes have to be counted as votes against. Unless, unless, if not manifestly unreasonable under Corporation Code Section 16103b3, is construed to mean that you cannot count the limited partnership units of people who are held by the control person because there's a breach of fiduciary duty. If you construed it that way, would you agree with that? I mean, I don't know. I know you wouldn't, but I mean, if you did, would you agree with that? I mean, I would concede that if you have to, if the law requires counting, you know, no votes as against, then this merger was not approved. Okay. So you don't even get to the issue that the other counsel interestingly postulated that the merger had gone through, because you would never have had enough votes on this postulate that I gave you to have approved the merger in the first place. No. And to the extent that they've conceded that the merger had gone through, I do think it's an academic question. If I may, I'd like to. So you're saying that if counsel on the opposite side concedes that the merger went through, then the fact that on the postulate that there was a breach of fiduciary duty and getting to it in the first place is irrelevant? Well, to the extent that the breach depends on the voting. Yeah. If I may, I'd like to. They can make it good by conceding that it's okay? Sure. That's an interesting idea. Interesting idea. If I may, Your Honor, I'd like to bring this Court back to the basis for the district court's ruling in this case, which was Federal Rule of Civil Procedure 9b. This case at bottom is a fraud case, and that was the first basis for the district court's dismissal. Judge Alsup went through the allegations very carefully. The first paragraph of the complaint, excuse me, of the order says, This order finds that plaintiffs have not satisfied the pleading requirements of Federal Rule of Civil Procedure 9b. Defendant's motion, therefore, is granted. I think two facts make this ruling especially appropriate. First, this was their second bite at the apple. Plaintiffs had been given leave to amend, and they were advised that leave for further amendments would not likely be granted in all likelihood. But second, and it's important to remember, as counsel for the plaintiffs have noted, they conducted a trial against PDC in State court in 2005. The Court issued a tentative ruling in that case in September 2005. According to them, their brief, there are numerous examples and findings in that case of how the proxy statement was misleading. If that is indeed the case, then it shouldn't have been difficult to plead those examples with particularity in the complaint. Judge Alsep found that they did not, and that is obviously a sound ground for affirmance of this decision here without reaching the other issues. I guess, Your Honor, at this point, I see I have five minutes remaining. But if there are further questions, I'm happy to take them. Is there an inconsistency in the proxy statement with respect to how nonvotes will be counted? I think the proxy statement certainly read as a whole is very clear. There are a couple different points at which it's addressed in the proxy statement. I've cited, I believe, one of them, and I'm just looking for my notes, where these are found. Isn't there a question on Appellee's Excerpt of Record, page 101, where it does say that there's a question and an answer, and it says that if you fail to return your proxy or mark abstain on your proxy, the effect will be the same as a vote against the merger proposal? Isn't that inconsistent with the other information in the proxy agreement that said that a nonvote will be counted in the same proportion as the unarrested partners? I don't believe so, Your Honor. There are a number of statements that speak to this question. The SCR-126 says that the merger will be approved only if a majority of those unaffiliated limited partners voting on the transaction vote for the merger. Page 138 says that abstains are counted as – it says that nonvotes are not counted. Abstains are counted as novotes, but nonvotes – so in other words, there's a distinction between a formal abstention that somebody files. That indeed was counted as a nonvote – or, excuse me, as a novote. But if you simply didn't return anything, including a formal abstention, then, you know, you sort of take your luck and go where the other folks go. I don't think that that's inconsistent. Well, I guess the point that I was asking was that there is a question and answer. This is question and answers about the transaction, and this is Appellee's Excerpts of Record. And do you have that, Counsel? I don't have the whole thing. This is Supplemental Excerpts of Record, which page? Appellee's Excerpts of Record. Thank you. It's 101. Okay. Page 101. And then if you look towards the bottom of the page, it says, What happens if I vote against the merger proposal? And at the last sentence there, it says, If you fail to return your proxy or mark abstain on your proxy, the effect will be the same as a vote against the merger proposal. I think this has to be read in light of the agreement as a whole, Your Honor. There are other clear statements that non-votes are non-votes, that abstentions are counted as votes. So is it fair to say that the answer to this question, then, was inaccurate, only with respect to the portion that said, If you fail to return your proxy? Because if you fail to return your proxy, that's a non-vote, correct? That is a non-vote, Your Honor. And so the intent was to advise them, If you fail to return your proxy, that's a non-vote, and non-votes will be counted in the same proportion as the disinterested people who do vote. Correct. But this indicated that if you didn't return your proxy at all, it was going to be counting as a no vote. I'm not sure this statement is clear, but I think in light of the proxy read as a whole, it was clear how the difference between what it means to vote to abstain affirmatively and what it means simply not to vote. Right. Thank you very much, Mr. Johnson. Mr. Adelstein, you have a minute and 28 seconds to finish your presentation. Let me quickly point out one other thing on that page. It says that if, for example, if unaffiliated limited partners holding 67 percent of the units voted for the merger proposal, then PIP partners will vote only 67 percent of its units for the merger proposal. That makes it clear. According to this, they should have voted 46 percent of their units for the merger, and it wouldn't have passed. The problem is the proxy is inconsistent. It says different things in different places. Although the partnership agreement requires a majority vote, correct? Correct. And is there anything that is manifestly unreasonable about the partnership agreement? Assuming that the partnership agreement, it doesn't address how a non-vote is counted, correct? Correct. And so in this context, they said majority vote is required, and the interested votes were voted in the same proportion as the disinterested votes, correct? Correct. And so what the partnership agreement can modify what the code requires, correct, unless it's manifestly unreasonable? Correct. And so what is unreasonable about having the interested votes to be voted in exactly the same proportion as the disinterested votes, the same proportion in which they are voted? For the issue of whether the merger should go through or not, there's nothing unreasonable about it. PDC could have voted all of its votes for the merger, all of its votes against the merger, split it any way that it wanted. For the purposes of whether or not a majority of the disinterested limited partners voted for the merger and PDC gets the benefits of ratification, it doesn't matter how PDC voted its units. The question is, of the disinterested limited partners, did a majority vote for the merger? You only look at that stuff. And the clearest way to see that is suppose that PDC had 80 percent of the vote and the limited partners just had 20 percent. PDC could just force the merger through on very unreasonable terms. But that's not the case here. And then perhaps in that context, that might have been manifestly unreasonable in that circumstance, correct? It might have been, yes. But the relevant issue for these purposes is of that 20 percent of the limited partners that are disinterested, this hypothetical, did a majority of that 20 percent vote for or against the merger? If a majority of that 20 percent that was disinterested voted for the merger, then PDC would have received a benefit of ratification. If not, it wouldn't have. But those aren't the facts here. Those are not the facts here. The question is whether a majority of the 70 of the 82 percent that were disinterested voted for or against the merger. And here, a majority did not vote for the merger. Only 46 percent affirmatively voted for the merger. Thank you very much, Mr. Adelstein. We thank you both for your fine arguments. The case of Parada v. Prometheus Development Company is submitted. The court will take a five-minute recess, and when we come back, we will start with Prometheus Development Company v. Everest Properties.
judges: Thompson, Smith, Hayes